STURLEE BROWN III,

v.                                    Case No. 2:05-cr-79-FTM-33DNF
                                            2:06-cv-559-FTM-33DNF

UNITED STATES OF AMERICA.

_____

## O R D E R

This cause is before the Court on Defendant Sturlee Brown III's amended 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence (hereinafter "motion to vacate") (Doc. cv-37) and the government's response to the motion to vacate. (Doc. cv-38).

## BACKGROUND

On August 4, 2005, a Federal Grand Jury in Fort Myers, Florida, indicted Brown in a single count Indictment for possession with intent to distribute five or more grams of cocaine base in case no. 2:05-cr-79-FtM-33DNF. (Doc. cr-3). Assistant Federal Public Defender Russell Rosenthal appeared on behalf of Brown on August 19, 2005. (Doc. cr-9). However, due to a *perceived* conflict, Attorney Rosenthal was allowed to withdraw on August 29, 2005. (Doc. cr-18). On August 30, 2005, the Court appointed Fort Myers CJA

Attorney Roy Foxall to represent Brown. (Doc. cr-19). On November 10, 2005, Brown pled guilty pursuant to a plea agreement. (Doc. cr-34).[1]

The government did not statutorily enhance Brown under 21 U.S.C. § 851. Therefore, Brown faced a minimum mandatory sentence of five years to a maximum of 40 years incarceration pursuant to 21 U.S.C. § 841(b)(1)(B)(iii). On December 2, 2005, the District Court accepted Brown's guilty plea (Doc. cr-42) and on February 9, 2006, sentenced Brown to 188 months incarceration. (Doc. cr-43). Based on the drug quantity that Brown possessed, 33.2 grams of cocaine base, Brown scored a gross level 28, adjusted to 25 for acceptance of responsibility, under the Sentencing Guidelines. (PSR ¶ ¶ 8, 15, 21, 22, 24).

However, Brown qualified as a career offender under U.S.S.G. § 4B1.1 based on three prior convictions: an aggravated battery conviction in 1990; a conviction for robbery with a firearm in 1992; and a conviction for felony cocaine possession 1997, all in the 20th Judicial Circuit Court for the State of Florida. (PSR ¶ 24). Therefore, pursuant to § 4B1.1, Brown automatically scored a gross level 34 at Criminal History Category VI. (PSR ¶ 55). Without the career offender criminal status under the guidelines, Brown's criminal history placed him in Criminal History Category V. (PSR ¶ 54). After credit for acceptance of responsibility, Brown's guideline range at Level 31, Criminal History Category VI, was determined to be 188 to 235 months. (PSR ¶ 88). The Court sentenced Brown to the low end of the applicable guidelines range, 188 months incarceration. (Doc. cr-43).

Judgment was entered February 14, 2006. (Doc. cr-44). No Notice of Appeal was

---

[1] In a second case, case no. 2:05-cr-82-FtM-33DNF, *United States v. Charles Edward Lane and Timothy Letord Hales*, filed August 17. 2005, Lane and Hales were charged with conspiracy to distribute cocaine in Lee County, Florida, up to and including May 21, 2005. (Doc. cr-3). On August 24, 2005. the Court appointed Foxall to represent Lane. (Doc cr-16). From August 29. 2005, Foxall represented both Lane and Brown throughout the proceedings leading up to and including their sentencings.

filed on behalf of Brown within the prescribed time period. Brown timely filed his original 28 U.S.C. § 2255 motion to vacate, raising four grounds for relief.

### Ground One

Counselor was ineffective for failure to file an appeal

Movant contacted Counsel twice about filing an appeal and attached both responses counsel made in reference to Movant's request.

### Ground Two

Whether the Court abused its discretion when in failing to notice a potential conflict of interest

Movant was willing to reveal information pertaining to Charles Lane. Movant had a drug dealing relationship between Himself and Mr. Lane which Counsel knew of as did the Courts, but failed to appoint separate attorneys to represent each defendant.

### Ground Three

Sentence is unconstitutional and violated Movant's 5th and 6th Amendment rights

The government never gave any advance notice as to the use of §851 enhancement, neither before the plea or before sentencing.

### Ground Four

Whether the Court erred when it found the Movant to be a career offender

Post *Booker* and *Apprendi* the court made clear that in order to enhance Movant it would have to be admitted by Movant or submitted to a jury. Here the court did not do either.

(Doc. cv-1) (slight editing for readability; original of grounds two, three and four below).

<u>Evidentiary Hearing on Grounds One and Two</u>

On May 4, 2007, the Court appointed CJA Attorney John Fernandez to represent Brown at an evidentiary hearing which was held October 26, 2007. (Doc. cv-19).[2] During the evidentiary hearing, witnesses were called and testimony was taken on grounds one and two of Brown's motion to vacate.

After the evidentiary hearing, the government filed its first supplemental response to Brown's motion to vacate. (Doc. cv-29). Attorney Fernandez filed a post-hearing memorandum on Brown's behalf. (Doc. cv-30). Both memoranda discussed *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005) in relation to ground one. Gomez-Diaz, like Brown, was convicted of, and sentenced for, federal offenses after entering into a plea agreement that included a sentence appeal waiver. *Id.* at 790. Also like Brown, Gomez-Diaz filed a pro se section 2255 motion alleging that his counsel had failed to file a requested notice of appeal. *Id.* The District Court dismissed the motion to vacate without an evidentiary hearing because Gomez-Diaz had not identified any ground for appeal that fell within any exception to his sentence appeal waiver. *Id.* The Eleventh Circuit vacated and remanded. *Id.* at 793. In doing so, the Eleventh Circuit: (1) read Gomez-Diaz's pleading liberally to allege that he had asked counsel to file an appeal but counsel had recommended filing a section 2255 motion instead, *id.* at 792; (2) concluded that the district court had erred in denying an evidentiary hearing because the pleading was insufficient to indicate whether Gomez-Diaz's expression to counsel of his desire to appeal had triggered counsel's duty to do so or whether counsel had fulfilled his duty to consult with the

---

[2] Although this was the second evidentiary hearing, the parties agreed that the hearing would be a de novo hearing, not a supplemental hearing. The parties agreed to treat "transcripts from the prior deposition [sic in origina] as we might depositions in a civil case." (Doc. cv-26 at pp. 5-6).

petitioner to determine his wishes, *id.* at 793; and (3) held that if the evidence established either that counsel had acted contrary to Gomez-Diaz's wishes, or that counsel had failed to fulfill his duty to attempt to determine Gomez-Diaz's wishes, prejudice would be presumed and Gomez-Diaz would be entitled to an out-of-time appeal, "regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver[,]" *Id.*

On September 11, 2008, after consideration of the testimony and exhibits at the evidentiary hearing, and pursuant to *Gomez-Diaz, the* Court granted relief on ground one of the motion to vacate in an order that read, in part:

> 1) Petitioner Sturlee Brown III's Motion under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. cv-1; Doc. cr-47) is **GRANTED** on ground one for the purpose of filing an appeal. Grounds two, three, and four are stayed and held in abeyance until the appeal is final.
>
> 2) The clerk is directed to vacate the judgment entered in criminal case 2:05-cr-79-FtM-33NDF on February 14, 2006, and to enter the identical judgment in that case on the date of this order. *See United States v. Phillips*, 225 F.3d 1198, 1201 (11th Cir. 2000).
>
> 3) Petitioner Sturlee Brown III is entitled to appeal to the extent permitted by the plea agreement.
>
> 4) The time for filing a Notice of Appeal from the re-imposed sentence is 10 days from the date of the entry of the judgment. See Rule 4(b)(1)(A)(I), Rules of Appellate Procedure.

(Doc. cv-32).

Brown filed a timely Notice of Appeal. On June 11, 2009, the United States Court of Appeals for Eleventh Circuit affirmed Brown's conviction and sentence, finding "after independent examination of the entire record . . . no arguable issues of merit," after Attorney Fernandez moved to withdraw from the case pursuant to *Anders v. California*, 386

5

U.S. 738 (1967). *See United States v. Sturlee Brown, III,* 327 Fed.Appx. 868, 2009 WL 1636080 (11th Cir. 2009). (Doc. cr-84).[3]

On January 12, 2010, this Court ordered Brown, through Attorney Fernandez, to file an amended motion to vacate raising the remaining grounds that were stayed and held in abeyance during Brown's belated appeal. (Doc. cv-34). Brown filed the amended motion to vacate (Doc. cv-37) on which he is proceeding.[4] The government filed a response to the amended motion to vacate. (Doc. cv-38).

**A review of the record, including the transcript of the evidentiary hearing, demonstrates that, for the following reasons, the remaining grounds have no merit and the motion to vacate must be denied.**

## DISCUSSION

### Ground Two -- Alleged Conflict of Counsel

Whether the Courts [sic] abused its discretion when failure [sic]
to notice a potential conflict of interest

Movant was willing to reveal information pertaining to Charles Lane. Movant had a drug dealing relationship between Himself and Mr. Lane. [sic] Which Counsel Knew of and the Courts. [sic] but failed to appoint separate attorneys to represent each defendant.

Brown argues that he was denied his right to counsel who was free of conflict. Brown is entitled by the Sixth Amendment to counsel whose concerns are in his best interest only, *Strickland v. Washington*, 466 U.S. 668 (1984); *Wheat v. United States*, 486 U.S. 1153

---

[3] On January 29, 2010, the United States Supreme Court denied Brown's petition for writ of certiorari. (Doc. cr-86).

[4] Brown raised only ground two (conflict of counsel) in his amended motion to vacate. However, the Court will address all of stayed claims that Brown raised in his original motion to vacate.

(1988); *United States v. Jones*, 52 F.3d 924 (11th Cir. 1995)

## The October 26, 2007 Evidentiary Hearing

<u>Brown's Contentions</u>

Brown contends that he and Lane, as federal defendants who were intending to enter guilty pleas, both had an interest in providing substantial assistance to the government in order to earn a reduced sentence. Brown testified that even though he asked Foxall to help him cooperate, Foxall took no action on his behalf. Foxall testified that he did not even question Brown about Hales and Lane. Given that Foxall read the discovery materials and knew that the cases were related, he must have realized that Brown might have been able to testify against Hales and Lane. Even knowing this, Foxall did not question Brown about what he could do to help himself. Any un-conflicted attorney would have found out what information Brown had about Lane and Hales lo determine what its value might be to the government.

Foxall's decision not to question Brown about Lane hurt Brown's case, but it was helpful to Lane. The only way to fully inform and advise Brown about all his options was to develop his potential to cooperate. This strategy was obvious given Brown's willingness lo plead guilty, and the readily apparent usefulness of witnesses against Hales and Lane, who were then pending trial. If Foxall had questioned Brown he could then have had information to use to induce the government to debrief Brown. If Brown were hesitant about cooperating, Foxall could have used this information to help Brown assess the value of his cooperation and what effect it might have had on his sentence. Even if Brown stated that he did nol want to cooperate, a competent attorney may have to explain several times what a § 5K1.1 means. Cooperation is often the only thing a defendant can do to help himself. Waiving that

opportunity should nol be done un-knowingly or unintelligently.

On the other hand by not asking Brown about Lane or Hales, and thereby not developing Brown as an alternative source of information to Lane, the value of Lane's assistance was increased by the simple expedient of reducing the supply of information to the government. The possibility of a conflict between Lane's and Brown's statements was also eliminated, preventing the chance that Lane might have been found to be lying. By choosing not to question Brown about Lane and Hales, Foxall diminished Brown's right to counsel, and he advanced Lane's interest in cooperating with the government.

Brown directly contradicted Foxall on several points in their testimony. Foxall asserted that Brown refused to cooperate. But Brown testified that he wanted to cooperate and had asked Foxall about cooperating. Brown's testimony was corroborated. Brown testified that he had asked the Federal Public Defender about cooperating. The assistant federal public defender testified that he had a vague memory that during the short time that he represented Brown, Brown had asked him about cooperating. It is nol unusual for defendants to seek out opportunities to reduce their sentences by earning substantial assistance, and if Brown was asking about cooperating with the Federal Public Defender, it is more likely that he would have looked favorably on the chance if Foxall had offered the chance to cooperate.

Foxall's testimony that he never even questioned Brown about Hales and Lane demonstrates a course of conduct that by its results, if not its intentions, protected Lane to the detriment of Brown.

<u>The Government's Contentions</u>

The government agreed to present its witnesses and evidence first, though Brown

bore the burden of proof. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000 )(*en banc*). **The government called Attorney Foxall, who testified as follows:**

The court appointed Foxall to represent Brown on August 30, 2005. (Doc. cr-26 at 9, 32). The United States charged Brown with possession with intent to distribute cocaine base, on or about June 19, 2005. (Doc. cr-26 at 32). Foxall reviewed the discovery provided by the government on September 11, 2005, and met with Brown at the jail on October 14, 2005. (Doc. cr-26 at 9, 22, 33, 34). Foxall and Brown discussed possible cooperation at that time and later on November 1. (Doc. cr-26 at 10, 11). However, concerned for his safety, Brown specifically declined to cooperate with law enforcement, saying that if he did so he would have to move to Lehigh. (Doc. cr-26 at 11). Foxall testified that it is his standard practice to discuss cooperation with his clients. (Doc. cr-26 at 11, 14).

Brown signed his plea agreement on November 1, 2005, after reviewing it with Attorney Foxall. (Doc. cr-26 at 11,14) Brown entered his plea of guilty on November 10, 2005. (Doc. cr-26 at 12) .

Foxall received the PSR, studied it on January 23, 2006, and explained it to Brown on January 31, 2006. (Doc. cr-26 at 12). Brown was sentenced on February 9, 2006. (Doc. cr-26 at 15, 16; Doc. cr-43).

Foxall further testified that he represented federal defendant Charles Lane in case no. 2:05-Cr-FtM-33DNF at the same time that he represented Brown. (Doc. cr-26 at 21, 22, 30). The Court appointed Foxall to represent

Lane about a week before Foxall was appointed to represent Brown. (Doc. cr-26 at 22). Lane's co-defendant was Timothy Hales. (Doc. cr-26 at 30).[5] Lane and Hales were charged with conspiracy to distribute cocaine base. (Doc. cr-26 at 31). Lane was released after his detention hearing on August 24, 2005, and began cooperating with law enforcement. (Doc. cr-6 at 22, 23).

According to a DEA report of investigation (Government's Ex. 4 at the hearing) provided to Foxall in Brown's case, Lane supplied cocaine to Hales. (Doc. cr-26 at 35, 36, 55). Lane's discovery indicated Hales had drive a vehicle registered to Brown while Hales was supplying cocaine to Lane. (Doc. cr-26 at 55, 62; Gov. Ex. 4). According to a DEA 6 provided to Foxall in discovery, Brown replaced Lane as Hale's cocaine supplier. (Government's Ex. 4; Doc. cr-26 at 25, 26). Foxall, therefore, recognized a potential conflict of interest and discussed that potential with both Brown and Lane. (Doc. cr-26 at 27, 36). However, Brown wanted to plead guilty and not cooperate with law enforcement. (Doc. cr-26 at 37). "It was Mr. Brown's position from the getgo that he wanted to plead guilty." (Doc. cr-26 at 37). "Mr. Brown maintained that at every meeting [Foxall] ever had with him." (Doc. cr-26-27).

Therefore, to Foxall "it did not look like both parties would be in a situation where they're testifying against each other or coconspirators." (Doc. cr-26 at 38). Lane was already cooperating and Brown declined to cooperate.

---

[5]  The Public Defender's Office represented both Brown and Hales at their initial appearances, but withdrew without seeing discovery because they had spoken with both, at the initial appearances. (Doc. cr-26 at 76-79, 82-84).

(Doc. cr-26 at 38). Lane did not cooperate against Brown and Foxall had no reason to believe that Brown could have cooperated against Lane. (Doc. cr-26 at 28). Brown could have cooperated against Hales had he wished to do so. (Doc. cr-26 at 27, 28).

Foxall did not bring the potential conflict to the attention of the Court or the United States Attorney's Office. (Doc. cr-26 at 39). Brown's plea agreement called for cooperation with law enforcement and Foxall had hoped that Brown would eventually change his mind and cooperate. (Doc. cr-26 at 40). However, Brown never changed his mind. (Doc. cr-26 at 42, 43). Foxall recalled that Brown declined to discuss anyone else's criminal activity with him. (Doc. cr-26 at 43).

Brown and Lane each signed plea agreements on November 10, 2005. (Doc. cr-26 at 45). Brown pleaded guilty that day and Lane pleaded guilty a week later on November 17, 2005. (Doc. cr-26 at 45). Lane ultimately received a two-level downward departure for cooperation pursuant to Rule 35. (Doc. cr-26 at 46). In the government's substantial assistance motion filed under Rule 35 in case no. 2:05-cr-82-FtM-33DNF on January 18, 2007, Lane was credited for cooperating against his co-defendant, Hales.

**Thereafter, Brown testified and contradicted Attorney Foxall on many points:**

Brown testified that he told Mr. Foxall he wanted to cooperate with law enforcement, never changed his mind about that, and was prepared to cooperate to the utmost. (Doc. cr-26 at 87, 88, 91). In fact, Brown testified that he asked Mr. Rosenthal about cooperating, "because I know a lot about the

Federal government and I know how you can help yourself." (Id). Brown denied speaking with Mr. Foxall about Charles Lane, whom he knew as "Sporty Black." (Doc. cr-26 at 89). Brown claimed to have information about Sporty Black and Timothy Hales. (Doc. cr-26 at 90). According to Brown, Mr. Foxall asked him about neither. (Id). Brown never talked to Foxall after sentencing. (Doc. cr-26 at 98).

## ANALYSIS

A conflict of interest will rise to the level of reversible constitutional error only if the defendant has demonstrated that an actual conflict adversely affected his lawyer's performance, and that counsel actively represented conflicting interests. *Cuyler v.Sullivan*, 446 U.S. 335 (1980). Prejudice is not presumed. *Mickens v. Taylor*, 535 U.S. 162 (2002). In *Smith v. Newsome*, 876 F. 2d 1461 (11th Cir. 1989), the court held that the performance of the defendant's lawyer was not adversely affected because the joint representation did not prevent effective plea bargaining on behalf of either client. Likewise, Brown has not shown that a conflict of interest adversely affected his counsel's performance.

Foxall represented Brown and Lane at the same time. Brown knew Lane as "Sporty Black." Foxall testified that Lane began cooperating with law enforcement immediately and that Brown declined to cooperate with law enforcement. In its Rule 35 motion, the government credited Lane with cooperating against his co-defendant Hales. Brown now claims that he too wished to avail himself of the "utmost" substantial assistance; that he could have cooperated against both Hales and Lane, and that he so advised Foxall. However, Lane was already cooperating, so any offer by Brown to cooperate against Lane would have been meaningless to the government. Had Brown wished to cooperate against

Hales, Foxall's representation of Lane would not have precluded such cooperation. However, according to Foxall, Brown was not willing to cooperate at that stage of the proceeding. Moreover, Brown's claim that Foxall ignored his requests to cooperate is incredible and there is otherwise nothing in the record to suggest that Foxall, in his representation of Brown, had anything but Brown's best interest in mind.

If Brown mentioned to the Federal Public Defender that he might be interested in cooperating at the inception of the case, clearly he knew that he could do so. Yet he repeatedly told Foxall that he was not interested in cooperating. This Court credits Attorney Foxall's testimony related to Brown's refusal to cooperate at any stage of the proceedings. because of the consequences he would face for doing so.

Brown has not made a factual showing of inconsistent interests and has not demonstrated that Foxall made a choice between possible alternative causes of action helpful to one client but harmful to the other. *See United Stales v. Novaton*, 27! F.3d 968, 1010-11 (11th Cir. 2001), *cert. denied*, 535 U.S. 1120 (2002).

### Ineffective Assistance of Counsel

To the extent that Brown argues implicitly that his counsel was ineffective because of counsel's alleged conflict of interest, to prevail on a claim of ineffective assistance of counsel, the defendant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by that inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000 )(*en banc*). There is a strong presumption that the challenged action constitutes sound trial strategy. *Chateloin v. Singletary*, 89 F.3d 749 (11th Cir. 1996).

Under *Strickland*, in order to prevail on a claim of ineffective assistance of counsel,

a defendant must show (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that counsel's deficient performance prejudiced the defendant. Brown has failed to satisfy either prong of *Strickland*.

Ground two does not warrant relief.

## Ground Three  -- Enhancement Notice under 21 U.S.C. § 851

Sentence is unconstitutional an [sic] violated Movant [sic]
5th and 6th amendment rights

The government never give any advance notice as to the use of 851 enhancement, nither [sic] before the plea or beforer [sic] sentencing.

Title 21 U.S.C. § 851 provides in pertinent part:

"No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information . . . stating in writing the previous convictions to be relied upon." 21 U.S.C. 851(a)(1).

Title 21, United States Code, Section 841(b)(1)(B), under which Brown was sentenced, provides in pertinent part:

"In the case of a violation of subsection (a) of this section involving- . . .

(iii) 5 grams or more of a mixture or substance . . . which contains cocaine base; . . .

Such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . .. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of 10 years and not more than life imprisonment . . . ."

The government did not file a § 851 notice in this case. Therefore, Brown faced a statutory imprisonment range of 5 to 40 years, rather than the possible imprisonment range of 10 years to life imprisonment if the government had filed a § 851 notice. Brown's

imprisonment for 188 months is well within the un-enhanced statutory range of 5 to 40 years. Brown's claim has no merit.

Ground three does not warrant relief.

### Ground Four -- Career Offender Enhancement under U.S.S.G. § 4B1.1

Whether the Court's error [sic] when it found the Movant
to be a career offender

Post *Booker* and *Apprendi* the court made clear that in order to enhance Movant it would have to be admitted by Movant or submitted to a jury. Here the court did not do either.

Brown argues that he was improperly enhanced as a career offender under U.S.S.G. § 4B1.1 since the government filed no notice under 21 U.S.C. § 851. The record reflects that Brown, who was 34 years of age at the time of the instant offense, was properly enhanced as a career offender under U.S.S.G. § 4B1.1 based on his three prior convictions in the 20th Judicial Circuit Court for the State of Florida. Brown was previously convicted for aggravated battery; robbery with a firearm; and felony cocaine possession. (PSR ¶ 24). U.S.S.G. § 4B1.1 applies to a defendant who: (1) was at least 18 years old at the time of the instant offense; (2) the instant offense is, among others, a controlled substance offense; and (3) the defendant has at least two prior convictions for a crime of violence or a controlled substance offense. The government need not follow the notice requirements of 21 U.S.C. § 851 in order to use a defendant's prior convictions to enhance his sentence as a career offender under the guidelines, so long as the defendant's sentence is not above the prescribed statutory maximum. *Young v. United States*, 946 F.2d 533 (11th Cir. 1991). Under 21 U.S.C. § 841(b)(1)(B)(iii), Brown faced a minimum mandatory sentence of five years to a maximum of 40 years in prison. His sentence of 188 months is well within that range.

Furthermore, *United States v. Booker,* 543 U.S. 220 (2005) and the preceding line of cases, including *Apprendi v. New Jersey*, 530 U.S. 466 (2000), are not retroactive on collateral attack. *See Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005); *In Re Joshua,* 224 F.3d 1281, 1282 (11th Cir. 2000). Finally, pursuant to *Booker*, only facts, **other than prior convictions**, which are necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. In the present case, at sentencing, this Court fully discussed the PSR and Brown's prior convictions, about which Brown had some questions. Attorney Foxall stated that he had read and discussed the PSR with Brown. (Doc. cr-71 at 3). The PSR establishes that Brown's criminal history supports his sentence. Brown's stated at sentencing that his criminal history made him appear to be a terrible person, but that, in reality, he had just "hung with a bunch of wrong crews, wrong times in my life."

Ground four does not warrant relief.

**Accordingly, the Court orders:**

That Brown's amended 28 U.S.C. § 2255 motion to vacate (Doc. cv-37) is denied. The Clerk is directed to enter judgment against Brown in the civil case and to close that case. The Clerk is directed to terminate any motion to vacate pending in the criminal case.

## CERTIFICATE OF APPEALABILITY AND

## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal

a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on February 5, 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Counsel of Record
Sturlee Brown III